UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ralph T. Knapp,                                       Civil No. 08-1284 (JRT/FLN)

　　　　　Plaintiff,

　　　v.                                              **REPORT AND RECOMMENDATION**

Matthew P. Vandergon, *et al.*,

　　　　　Defendants.

---

Paul Voge, Phillip A. Smith for Plaintiff.
Eric G. Nasstrom for Defendants Argent Mortgage Co. LLC and Deutsche Bank National Trust Company.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on May 15, 2009 on Defendant Argent Mortgage Co. LLC and Deutsche Bank National Trust Co.'s Motion for Summary Judgment [#68]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. In his Complaint, Plaintiff Ralph T. Knapp alleges six counts, including violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f; the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. §§ 1602(aa), 1639; and Minn. Stat. §§ 325N.01-.18, a consumer protection statute governing mortgage foreclosures. For the reasons which follow, this Court recommends Defendant Argent Mortgage Co. LLC and Deutsche Bank National Trust Co.'s Motion for Summary Judgment [#68] be granted in

part and denied in part.[1]

## I. FINDINGS OF FACT

This case arises out of a series of real estate transactions related to a property in Ely, Minnesota. In the spring of 2005, Plaintiff Ralph T. Knapp was facing foreclosure on his Ely home. (Am. Compl. ¶ 28.) In the ensuing months, Knapp met Defendant Matthew P. Vandergon, co-owner of Defendant company Alternative Residential Resources ("ARR"). *Id.* at ¶ 30. Vandergon told Knapp he could save Knapp's home. *Id.* To this end, Knapp entered into a December 7, 2005 "Foreclosure Consulting Agreement" with ARR providing that, in exchange for $2,000, ARR would help Plaintiff find a way to obtain new financing for his home. (Smith Aff. Ex. 1 ¶ 1.) Matthew Vandergon eventually arranged for his wife, Lisa Vandergon, to enter into a financing agreement in which Lisa Vandergon purchased Knapp's home and then sold it back to him on a contract for deed.[2] (Am. Compl. ¶ 73; Smith Aff. Exs. 3, 5.) Knapp and Lisa Vandergon entered into an Investor Agreement to this effect on December 27, 2005, which stated that Knapp would "have and possess *equitable* title to the Property with all *legal* title being reserved to [Lisa Vandergon] who shall transfer the same to [Knapp] upon satisfaction of the terms of the Contract for Deed." (Knapp

---

[1] Plaintiff's Motion for Partial Summary Judgment as to Matthew P. Vandergon, Lisa Vandergon, Alternative Residential Resources, LLC and MPV Homes, LLC (Doc. No. 60) was also scheduled to be heard on May 15, 2009, but at the time of the hearing the litigation with respect to these parties was subject to an automatic stay under 11 U.S.C. § 362 of the United States Bankruptcy Code. Matthew Vandergon, Lisa Vandergon, and their associated businesses filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Minnesota on February 20, 2009. (Pet. No. 09-40928.)

[2] A transaction involving the transfer of title to real property by a foreclosed homeowner and the subsequent conveyance, or promise of a subsequent conveyance, of an interest back to the foreclosed homeowner (by, for example, a contract for deed) is defined by Minn. Stat. § 325N.10, subd. 3 as a "foreclosure reconveyance."

Aff. Ex. 9 (emphasis added).) To fund the purchase of Knapp's home, Lisa Vandergon obtained a loan from Defendant Argent Mortgage Co., LLC. [3] (Mihalek Aff. Ex. F.) Defendant Michael Gearman, who co-owns ARR with Matthew Vandergon, arranged for Lisa Vandergon's loan financing in his capacity as mortgage broker for Defendant Community Residential Mortgage Co. ("CRM"). (Am. Compl. ¶ ¶ 69, 72.)

A. **The First Closing**

The closing for the Knapp foreclosure reconveyance began at 11:00 a.m. on January 3, 2006 in Defendant First Union Title's offices. (Knapp Aff. ¶ 26.) First Union Title was the "Settlement Agent" for the transaction, and First Union owner Michael J. Kielty and First Union employee Michelle Hutton were present at the closing. (Knapp Aff. ¶ 26; Mihalek Aff. Ex. G.) Knapp, Matthew Vandergon, and Gearman were also present in the First Union Title office. *(*Knapp Aff. ¶ 26.) Lisa Vandergon was not present; Matthew Vandergon signed papers as her attorney-in-fact. *Id.* The purchase agreement between Knapp and Lisa Vandergon, which listed Lisa Vandergon as the buyer for the purchase price of $230,000, was prepared by Matthew Vandergon in his capacity as a real estate agent for Defendant Action West, Inc. (Smith Aff. Ex. 5; Knapp Aff. ¶ 23, Exs. 8A - 8L.) Knapp alleges that, at the closing, he signed 1) the purchase agreement selling his house to Lisa Vandergon and 2) the contract for deed identifying Knapp as the purchaser for his house and Lisa Vandergon as the seller. (Am. Compl. ¶ 73; Smith Aff. Ex. 3, Knapp Aff. ¶ ¶ 27-28.) The contract for deed, which had been signed by Lisa Vandergon prior to the 11:00 a.m. closing, is dated

---

[3] On or about March 26, 2008, the mortgage Argent obtained from Lisa Vandergon was assigned to Defendant Deutsche Bank National Trust Company ("DBNTC") as trustee. (Reyes Aff. ¶ ¶ 2-4.) DBNTC is in the business of acting as trustee on securitized transactions. *Id.* at ¶ 2. DBNTC and Argent jointly submitted the instant motion for summary judgment and will be collectively referred to as "Argent" for purposes of this Report and Recommendation.

3

January 3, 2006. (Knapp Aff. ¶ 27, Ex. 10; Mihalek Aff. Ex. K.) When Knapp signed the contract for deed, he alleges Matthew Vandergon told him it would not be recorded in order to save Knapp significant deed taxes. (Knapp Aff. ¶ 27.) Knapp alleges that none of the individuals present at the closing provided any notices, disclosures, or any other information related to the contract for deed and that he left the closing with what he believed to be a valid contract for deed. *Id.* at ¶¶ 28, 31. Contradicting Knapp's allegation that he signed the contract for deed at the closing, First Union denies that the contract for deed was signed at the closing and denies any knowledge that Plaintiff and Lisa Vandergon entered into a contract for deed at the time of the closing. (Memorandum in Support of First Union, Michael Kielty, and Michelle Hutton's Motion for Summary Judgment at 5-6, Doc. No. 42.) First Union simply alleges that it "closed the transaction precisely according to the lender's [Argent's] instructions." *Id.* at 6. For its part, Argent alleges it had no knowledge of the contract for deed and that Argent did not receive the contract for deed until after the loan proceeds had been disbursed and the closing completed. (Carnes Aff. ¶¶ 5, 6.) Argent further alleges it did not know Lisa Vandergon intended to reconvey the property to Knapp, and was unaware that Knapp believed he had retained an interest in the property until it was served with Knapp's Complaint. *Id.*

    **B.**    **The Second Closing**

Further complicating matters, a few hours after the January 3, 2006 morning closing ended – with only one hour left before Knapp's redemption period was set to expire – Matthew Vandergon contacted Knapp and said there were fatal problems with the morning closing. *Id.* at ¶ 32. Vandergon told Knapp that everyone would have to reconvene at First Union's offices to re-sign closing documents. *Id.* Knapp, Matthew Vandergon, Lisa Vandergon, and Kielty were present at

4

the second closing. (Am. Compl. ¶ 93.) Plaintiff alleges that Lisa Vandergon signed the same Argent-provided mortgage documents that were signed at the morning closing.[4] (Am. Compl. ¶ 94.) Knapp also alleges that he, Lisa Vandergon, and Kielty signed another HUD-1 Settlement Statement containing the same numbers as the HUD-1 Settlement Statement signed at the first closing.[5] (Am. Compl. ¶ 94; Mihalek Aff. Ex. G.) At this second closing, Knapp alleges that Matthew Vandergon also presented him with papers Knapp had not seen at the morning closing – a rental agreement and an option agreement for the Ely property, including terms of a two-year lease with an option to purchase at the end of two years for $230,000. (Am. Compl.¶ 95; Knapp Aff. ¶ 33, Exs. 13, 14.) Knapp alleges he did not sign these agreements because he did not understand why he would need an option contract when he already had a valid contract for deed.(Am. Compl. ¶ 97; Knapp Aff. ¶ 33, Exs. 13, 14.) However, the parties did clarify the contract for deed at the second closing by agreeing that Knapp would make monthly payments of $1,860.76 on the contract for deed. (Knapp Aff. ¶ ¶ 34-35.) Knapp remained in his home and made the $1,860.76 monthly payment to the Vandergons until June 2007. *Id.*

To finance the purchase of Knapp's home, Lisa Vandergon obtained a purchase money mortgage from Argent for $207,000, of which $194,203.85 went to pay off Knapp's existing mortgage loan. (Mihalek Aff. Exs. F,G.) The HUD-1 Settlement Statement prepared by First Union

---

[4] The record appears to indicate that the contract for deed was not re-signed at the second closing.

[5] Federal law requires that uniform settlement statements be prepared at closings all of real estate transactions "which involve federally-related mortgage loans." 12 U.S.C. § 2603 (2009). The uniform settlement statement used in the transaction here is called a HUD-1 Settlement Statement, and includes a detailed breakdown of funds disbursed at the closing. (Mihalek Aff. Ex. G.)

5

also shows that the seller, Knapp, paid a $2,000 consultation fee to ARR and an "Investors[sic] Agreement Fee" of $8,000 to Defendant MPV Homes, which is controlled by Matthew P. Vandergon. (Mihalek Aff. Ex. G; Am. Compl. ¶ 94.) First Union Title is identified on the HUD-1 settlement statement as the "Settlement Agent," and the signature for First Union Title appears to be that of owner Michael Kielty. (Mihalek Aff. Ex. G.) Argent Mortgage Company, LLC is listed as the Lender. *Id.* Additionally, Lisa Vandergon's Purchase Money Mortgage papers, dated January 3, 2006 and recorded with St. Louis County on January 18, 2006, lists Argent as the lender and states that it was drafted by Argent. (Mihalek Aff. Ex. F.) The last page of the primary purchase money mortgage document is notarized by Kielty, and "First Union Title" is handwritten on the front page of the mortgage papers within what appears to be a St. Louis County stamp listing an Abstract Form Request number and a cash amount of $46. *Id.* The HUD-1 settlement statement reflects that $46.00 was to be paid by seller Lisa Vandergon to the St. Louis County Recorder's Office. (Mihalek Aff. Ex. G.)

Knapp filed his Complaint on April 9, 2008 in Minnesota's Sixth Judicial District Court, and it was subsequently removed to federal court. (Doc. No. 1.) The Complaint alleges that the Knapp-Vandergon foreclosure reconveyance arrangement was in violation of state and federal laws protecting foreclosed homeowners, and alleges that the foreclosure reconveyance created an equitable mortgage subject to rescission in favor of Knapp. (Am. Compl. ¶ ¶ 121-88.) Argent now moves for summary judgment on all counts, and asks the Court to declare that Argent has a valid security interest in the subject property that is prior and superior to any interest that Knapp might retain.

## II. STANDARD OF REVIEW

According to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In order to determine whether a certain fact is material, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The inquiry performed is the threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

When determining whether to grant a motion for summary judgment, a court must view all of the facts in the light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). When the moving party brings forth a proper summary judgment motion, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Anderson*, 477 U.S. at 256 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."); *see also Celotex Corp. v. Catrett*, 477

U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c).")

### III. LEGAL ANALYSIS

### A. Argent's Motion For Summary Judgment Must Be Denied As To Count Six of the Complaint Alleging An Equitable Mortgage

Knapp alleges in Count Six of the Complaint that the foreclosure reconveyance arrangement with the Vandergons gave rise to an equitable mortgage. He further alleges that the equitable mortgage created by the foreclosure reconveyance transaction is subject to rescission because the Vandergons did not make requisite disclosures under the Truth in Lending Act ("TILA"),15 U.S.C. §§ 1601-1667f, and TILA's component part, the Home Ownership and Equity Protection Act ("HOEPA"), as incorporated by Minn. Stat. §§ 325N.17. HOEPA's implementing regulation, known as Regulation Z, grants consumers a right of rescission in certain circumstances, including when they have not been provided with consumer-protection disclosures. 15 U.S.C. § 1639, 12 C.F.R. 226.31-34; Minn. Stat. § 325N.17(a)(4). In its Motion for Summary Judgment, Argent does not dispute Knapp's allegation that the Vandergons failed to make the statutorily-required disclosures. However, Argent does argue that the foreclosure reconveyance transaction did not create an equitable mortgage, and that even if it did create an equitable mortgage, rescission should not affect Argent's interest in the property and its corresponding ability to foreclose its mortgage. In response, Knapp argues that rescission, if granted, would necessarily leave Lisa Vandergon with no interest in the subject property, and that it logically follows that since Lisa Vandergon could only grant an interest to Argent equal to the interest she held – which would be nothing – Argent is left with an unsecured interest in the property. For the reasons which follow, the Court finds that a

8

genuine issue of material fact exists as to whether the foreclosure reconveyance created an equitable mortgage, and that Argent's Motion For Summary Judgment is therefore premature because the potential remedy of rescission would almost certainly affect or determine its interest in the property.

*i. A Genuine Issue of Material Fact Exists As To Whether The Foreclosure Reconveyance Transaction Created An Equitable Mortgage*

The function of the equitable mortgage doctrine is to allow the substance of certain real-estate transactions to trump their form. *Anderson v. Sprieter*, 2008 WL 4287386, *2 (D. Minn. Sept. 16, 2008). An equitable mortgage is created when a deed that appears absolute on its face is in fact given as security for a loan. *Ministers Life & Casualty Union v. Franklin Park Towers Corp.*, 239 N.W.2d 207, 210 (1976)("The controlling legal principle governing our resolution of all of these cases is that a deed absolute in form is presumed to be, and will be treated as, a conveyance unless both parties in fact intended a loan transaction with the deed as security only."). Courts will exercise their equitable powers to effectuate the intent of both parties to a transaction and to prevent any overreaching by one party which would unfairly exploit the other party's financial position or relative lack of expertise in real estate dealings. *Id.*

The key issue in equitable-mortgage cases is the intention of the parties at the time of the conveyance; a transaction will not be construed as an equitable mortgage unless both parties intended to enter into a mortgage agreement. *St. Paul Mercury Ind. Co. v. Lyell*, 11 N.W.2d 491, 494 (1943); *Miller v. Anderson*, 394 N.W.2d 279, 283 (Minn. Ct. App. 1986). The intent of the parties is to be ascertained by documents relating to the transaction, as well as the attendant facts and circumstances of the transaction. *Jones v. REES-MAX LLC*, 514 F. Supp. 2d 1139, 1145 (D. Minn. 2007) (citing *Ministers Life*, 239 N.W.2d at 210). Courts also consider the following factors

in making a determination as to whether a conveyance should be construed as an equitable mortgage: 1) the disparity between the value of the property and the price paid; 2) the nature of the solicitation that gave rise to the transaction; 3) attempts to sell the property on the open market; and 4) whether there was continuous occupancy. *Jones*, 514 F. Supp. 2d at 1146 (citing *Brown v. Grant Holding*, LLC, 394 F. Supp.2d 1090, 1098-99 (D. Minn 2005)). The existence of an equitable mortgage is a question for the trier of fact. *Gagne v. Hoban*, 159 N.W.2d 896, 900 (Minn. 1968).

In the instant case, Knapp has brought forth sufficient facts showing that there is a genuine issue for trial with respect to the parties' intent to create an equitable mortgage. First, Knapp asserts that he believed the Vandergons were offering him a financing service – for which he paid them at least $11,000 – that would allow him to continue to own his home by paying monthly installments on the contract for deed. (Mihalek Aff. Ex. 6, Knapp Aff. ¶¶ 10-16.) Indeed, there is evidence that Matthew Vandergon approached Knapp at least three times with offers to enter into a foreclosure reconveyance deal. (Knapp Aff. ¶¶ 10, 13.) Second, the December 27, 2005 "Investors Agreement" between Knapp and Lisa Vandergon, entered into only a week before the January 3, 2006 transaction took place, specifically states that Knapp would retain equitable title to the property after he sold the house to Lisa Vandergon and she sold it back to him on a contract for deed. (Knapp Aff. Ex. 9 ¶¶ 2-3, 5.) Third, Knapp asserts that he believed he left the first closing with a valid contract for deed, that he made monthly $1,860.75 payments on the contract for deed for 1.5 years, and that he has continuously remained in the property. (Knapp Aff. ¶¶ 31, 34-38.) Together with evidence that Knapp was unfamiliar with foreclosure reconveyance transactions, evidence that he could have walked away from his home without paying a dime but instead left the closing table at least $37,000 poorer, and evidence that he unsuccessfully attempted to sell his house on the open

market and turned to the Vandergons only as a last resort, the Court finds that Knapp has brought forth sufficient evidence for a jury to find that the conveyance at issue should be construed as an equitable mortgage. (Knapp Aff. ¶¶ 12-14; Mihalek Aff. Ex. G.)

In its brief, Argent argues that Knapp is not an equitable mortgagor because the record demonstrates Knapp transferred title to Lisa Vandergon via warranty deed, and because no mortgage instruments were involved in the contract for deed portion of the transaction. (Argent. Reply Mem. at 8.) Argent's arguments are unpersuasive because they "elevate form over substance." *Jones*, 514 F. Supp. 2d at 1145. "The true inquiry is whether the parties intended an outright sale or whether the 'purpose and effect of the transaction is to give security on real property for a debt." *Jones*, 514 F. Supp. 2d at 1145 (quoting *Gagne*, 159 N.W.2d at 899). As discussed above, the Court finds a genuine issue of material fact exists as to whether Knapp and Lisa Vandergon intended to create an equitable mortgage.

  *ii. Rescission*

Knapp argues that he derives a right of rescission under the federal Home Ownership Equity Protection Act (HOEPA) and its implementing statute, Regulation Z, as incorporated by Minn. Stat. § 325N.17(a)(4). 15 U.S.C. § 1639, 12 C.F.R. 226.31-34. The arguments Argent makes for the proposition that HOEPA does not apply to the foreclosure transaction are entirely unpersuasive because each argument artificially focuses on only one half of the foreclosure reconveyance transaction - the transfer of title from Knapp to Lisa Vandergon. By definition, a foreclosure reconveyance transaction is the sum of two parts: 1) The transfer of title from the foreclosed homeowner to an acquirer; and 2) The subsequent reconveyance of an interest back to the foreclosed homeowner. Minn. Stat. § 325N.10 subd. 3. It is clear that Knapp is claiming a right of rescission

11

with respect to the second half of the transaction, meaning that for the contract for deed reconveyance Lisa Vandergon is the seller/creditor and Knapp is the buyer/borrower/obligor. Thus, assuming without deciding that the transaction is controlled by Minn. Stat. § 325N.17, HOEPA and Regulation Z, and further assuming without deciding that Lisa Vandergon failed to make the required disclosures, it follows that a jury could find that the January 2, 2006 transaction created an equitable mortgage subject to rescission in favor of Knapp.

However, even if a jury finds Knapp is entitled to rescission, the Court has wide discretion as to fashioning an equitable rescission remedy. *Foster v. Smith*, 2009 WL 703702 *3-4 (D. Minn. March 16, 2009)(denied summary judgment to bank as premature because question of whether foreclosed homeowner was an equitable mortgagor was unresolved). Argent has made a variety of arguments to the effect that it would be unfair to give Knapp a windfall by granting him title to the property free and clear – especially since Knapp entered into this transaction owing $194,203.85 on his existing mortgage. Argent urges the Court to consider it an innocent third party that could be left with an unsecured $207,000 loan against a bankrupt debtor. (Pet. No. 09-40928.) For his part, Knapp states in his responsive memorandum that he has never alleged that title to his home should be returned to him free of encumbrances, and acknowledges that the redemption pay-off amount of $194,203.85 was a benefit he received from the January 3, 2006 transaction. Argent also argues that any rescission here should be conditioned upon repayment to Argent, citing *Jones*. 514 F. Supp. 2d at 1146 ("the right to the remedy of rescission may be conditioned upon repayment to a creditor"). Although the Court acknowledges the potential validity of Argent's arguments, they are more properly brought at a later stage in the litigation. Determining how to equitably condition the remedy of rescission is not for the Court to decide until the merits of Knapp's equitable mortgage

and rescission claims are resolved. *Foster*, 2009 WL 703702 *3. Therefore, Argent's arguments with respect to rescission and other remedy-based arguments are premature. Similarly, Argent's argument that it is entitled to a judgment declaring that its interest in the property is prior and superior to any interest Knapp may hold is also premature, and Argent's Motion for Summary Judgment must be denied to the extent it requests such a judgment.

  *iii. Genuine Issues of Material Fact Exist As To Whether Argent Is A Bona Fide Purchaser*

Even if Knapp is an equitable mortgagor with a right of rescission, Argent contends, the Argent mortgage should be deemed superior to Knapp's interest in the property because it is a bona fide purchaser with respect to the mortgage it received from Lisa Vandergon. Under Minnesota law, bona fide purchasers are protected by the Minnesota Recording Act.[6] Minn. Stat. § 507.34; *see also Miller v. Hennen*, 438 N.W.2d 366, 369 (Minn. 1989)("The goal of the statute is to protect persons who buy real estate in reliance upon the record.").[7] However, a purchaser who has actual, implied or constructive notice of the outstanding rights of another is not a bona fide purchaser entitled to the protection of the recording act. *Claflin v. Commercial State Bank of Two Harbors*, 487 N.W.2d 242, 248 (Minn. Ct. App. 1992)(citing *Miller*, 438 N.W.2d at 370.).

Knapp argues that Argent is not a bona fide purchaser because Argent had both actual and

---

[6] The Recording Act, Minn. Stat. § 507.34, provides: "Every conveyance of real estate shall be recorded in the office of the county recorder of the county where such real estate is situated; and every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate, or any part thereof, whose conveyance is first duly recorded, and as against any attachment levied thereon or any judgment lawfully obtained at the suit of any party against the person in whose name the title to such land appears of record prior to the recording of such conveyance."

[7] Under Minnesota law, a grant of a mortgage is a conveyance of real estate and therefore falls within the protection of the Minnesota Recording Act. *Spielman v. Albinson*, 236 N.W. 319, 320 (1931); *In re Ibach*, 399 B.R. 61 (Bankr. Minn. 2008).

13

implied notice of his contract for deed interest. First, Knapp argues Argent had actual notice on an agency theory. Under Minnesota law, it is well settled that notice given to an agent is notice to the principal. *Rognrud v. Zubert*, 165 N.W.2d 244, 249 (Minn. 1969); *see also* Restatement (Third) of Agency §5.01-5.03 (2006). Knapp contends that First Union Title (and its employees Kielty and Hutton) are Argent's agents for notice purposes. It is undisputed that Kielty was present at the first and second closings. Knapp has brought forth evidence to show that he signed the contract for deed at the first closing, and that he discussed the contract for deed with Matthew Vandergon at the second closing. (Knapp Aff. ¶ 26; Mihalek Aff. Ex. G.) Thus, Knapp argues, Kielty had actual notice of Knapp's contract for deed interest in the property. It follows, then, that if Kielty is Argent's agent, Argent also had actual notice of Knapp's contract for deed interest and cannot be a bona fide purchaser. In its brief, Argent does not address the agency notice theory – it simply argues that because Argent itself was not present at either closing, Argent could not have had actual notice.

As evidence that First Union Title was acting as Argent's agent, Knapp points to the HUD-1 Settlement Statement, which identifies First Union Title as the "Settlement Agent." (Mihalek Aff. Ex. G.) The signature for First Union Title on the settlement statement appears to be that of First Union Title owner Michael Kielty, and Argent Mortgage Company, LLC is listed as the Lender. *Id.* Additionally, Lisa Vandergon's Purchase Money Mortgage papers, dated January 3, 2005 and recorded with St. Louis County on January 18, 2006, list Argent as the lender. (Mihalek Aff. Ex. F.) The mortgage itself states that it was drafted by Argent, and the mortgage was notarized by Kielty. *Id.* Furthermore, "First Union Title" appears within a stamp on the front page of the mortgage papers together with a cash amount of $46, giving rise to the inference that First Union

14

Title recorded the mortgage for Argent. (Mihalek Aff. Ex. G.) The HUD-1 settlement statement prepared by First Union Title reflects that $46.00 was to be paid by seller Lisa Vandergon to the St. Louis County Recorder's Office. *Id.* The Court finds that these facts give rise to a reasonable inference that First Union Title was acting as Argent's agent during the foreclosure reconveyance transaction, and that First Union and Michael Kielty knew about the contract for deed. Thus, the Court finds that a genuine issue of material fact exists as to whether Argent had actual notice of Knapp's unrecorded contract for deed interest in the property.[8]

Second, Knapp argues that Argent had implied notice of his contract for deed interest. Implied notice has been found where one has 'actual knowledge of facts which would put one on further inquiry.' *Miller*, 438 N.W.2d at 370 (quoting *Anderson v. Graham Inv. Co.*, 263 N.W.2d 382, 384-85 (Minn.1978)). Knapp's argument boils down to an assertion that because the HUD-1 Settlement Statement clearly shows that Knapp, the seller, brought over $30,000 to the closing table, Argent should have known that the transaction was more than a simple sale of property. (Mihalek Aff. Ex. G.) Also, Argent could easily discern from the settlement statement that Knapp was paying an $8,000 investor fee to MPV Homes and a $2,000 consultation fee to ARR. *Id.* Lastly, Argent issued a rider in Lisa Vandergon's mortgage that purported to allow her to rent out the home, but Argent never inquired as to whether Knapp intended to remain in the home as a tenant or otherwise. (Mihalek Aff. Ex. F.) Knapp argues that these facts, taken together, are sufficient evidence from

---

[8]Alternatively, Knapp argues that Argent had actual notice because the contract for deed was transmitted to Argent by First Union Title before the Argent mortgage was recorded on January 18, 2006. However, Argent employee Tami Carnes states in her affidavit that Argent had no knowledge that Knapp believed he had retained an interest in the property, and that Argent did not receive the contract for deed until after the closing. (Carnes Aff. ¶¶ 4-7.) Knapp has brought forth no specific facts to show that the contract for deed was transmitted to Argent before the mortgage was recorded.

15

which a jury could find that an experienced lender like Argent should have known to inquire about a possible unrecorded interest in the property. The Court agrees, and finds that a genuine issue of material fact exists as to whether Argent had inquiry notice of Knapp's unrecorded interest in the property. In sum, genuine issues of material fact exist as to Argent's bona fide purchaser status because Knapp has brought forth sufficient facts upon which a jury could find Argent had actual and/or implied notice of Knapp's contract for deed.[9] Thus, Argent is not entitled to summary judgment as to Count Six of the Complaint.

### B. The Record Shows Summary Judgment is Unnecessary as to Counts One, Two, Three, Four and Five of the Complaint

Summary judgment with respect to Argent is unnecessary as to Counts One, Two, Three, Four, and Five of the Complaint because the record is sufficiently clear that no claims were made against Argent in these five Counts. Counts One through Four of the Complaint mention certain of the Defendants but do not mention Argent. Count Five of the Complaint specifically excepts Argent. Furthermore, Plaintiff agrees that Argent is an excepted Defendant with respect to Counts One through Five. (Pltf's Mem. Opp. at 2.) As it appears the record is clear that no claims are made against Argent in Counts One through Five, summary judgment must therefore be denied as moot with respect to those five counts.

### IV. RECOMMENDATION

---

[9] The genuine issues of material fact that exist as to Argent's actual and implied notice of the contract for deed also preclude summary judgment as to Argent's equitable estoppel argument, as a necessary component of its estoppel claim is reasonable reliance on the promises made in the closing papers that there were no unrecorded interests in the Ely property. (Argent Mem. Supp. at 35.) Argent's actual or implied knowledge of the contract for deed would, of course, detract from the reasonableness of Argent's reliance upon the face of the closing papers.

16

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Argent Mortgage Co. LLC and Deutsche Bank National Trust Co.'s Motion for Summary Judgment [#68] be **DENIED**.

DATED: August 3, 2009            *s/ Franklin L. Noel*
                                                    FRANKLIN L. NOEL
                                                    United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **August 14, 2009**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **August 14, 2009,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.